Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Alma Kitagawa*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Alma Kitagawa,<br><br>                Plaintiff,<br><br>        v.<br><br>Aetna Life Insurance Company; The Boeing Company; The Boeing Company Non-Union Long-Term Disability Plan,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT** |

        Now comes the Plaintiff Alma Kitagawa (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

        1.        Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, The Boeing Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna").  The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees.  Upon information and belief, the Aetna Policy may have been included in and part of an employee benefit plan, specifically named The Boeing Company Non-Union Long-Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, Aetna functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

5.      Plaintiff alleges Aetna operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits.  Aetna's conflict existed in that if it found Plaintiff was disabled, it was then liable for the payment of her disability benefits.

6.    The Company, Aetna and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

7.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8.    Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

9.    After working for the Company as a loyal employee, Plaintiff became disabled on or about December 15, 2011, due to serious medical conditions and was unable to work in her designated occupation as an Electrical Technician.  Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10.    Following her disability, Plaintiff filed a claim for short term disability benefits which was approved by Aetna, and those benefits have been paid and exhausted. Following the exhaustion of her short term disability benefits, Plaintiff then filed for long term disability benefits under the relevant Policy which was administered by Aetna, meaning it made the decision with regard to whether Plaintiff was disabled.

11.    The Aetna Policy provides the following definition of disability pertaining to long term disability benefits:

"You become disabled as a result of accidental injury, illness or a pregnancy-related condition and your accidental injury, illness or pregnancy prevents you from performing the material duties of your own occupation (or other work the Company makes available) during the 26-week elimination period and first 24 months of benefits. After 24 months of benefits, you must be unable to work at any reasonable occupation for which you may be fitted by training, education, or experience."

12.    In support of her claim for long term disability benefits, Plaintiff submitted to Aetna medical, vocational and lay-witness evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

13.    In a letter dated March 1, 2013, Aetna informed Plaintiff it was approving her claim for long term disability benefits.

14.    As part of a review of Plaintiff's disability claim, on June 5, 2014 Aetna referred her to an evaluation with a physical therapist that it chose, Michelle Suski, PT. After a superficial evaluation with Ms. Suski, who upon information and belief, Plaintiff alleges may be regularly retained by the insurance industry, she opined Plaintiff was able to engage in a gainful occupation and was not disabled.  Plaintiff alleges that Ms. Suski's opinion that she can engage in a gainful occupation is inaccurate, erroneous and against the clear weight of all the evidence.  Upon information and belief, Plaintiff alleges a motivating factor why Ms. Suski opined she was able to return to a gainful occupation is in part due to her relationship with the insurance industry and the regular evaluations she may perform for the industry.  As a result of her relationship with the insurance industry, Plaintiff alleges that Ms. Suski may have an interest in protecting that relationship and as a result, she may be biased and lack objectivity.

15.    As an additional part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing, Kenneth E. Root, Jr., D.O.

16.     Upon information and belief, Plaintiff alleges Dr. Root may be a long time medical consultant for the disability insurance industry and/or Aetna.  As a result, Plaintiff alleges Dr. Root may have an incentive to protect his own consulting relationship with the disability insurance industry and/or Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

17.     During the administrative review of Plaintiff's claim, she also applied for, was approved and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

18.     In a letter dated May 8, 2014, Plaintiff informed Aetna that her claim for Social Security disability benefits had been approved and she submitted to Aetna a copy of her April 25, 2014 Notice of Decision – Fully Favorable from the SSA.   Plaintiff's SSA claim was approved by an Administrative Law Judge, following an administrative hearing.

19.     On May 20, 2014, Plaintiff submitted to Aetna a complete copy of her Social Security disability claim file for consideration in her long term disability claim.

20.     The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of December 14, 2011.

21.     The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Aetna Policy for the first 24 months of disability and substantially similar to the Policy's definition of disability after the first 24 months of disability.  Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness of Aetna's decision to terminate Plaintiff's disability benefits.

22.     In a letter dated August 20, 2014, Aetna informed Plaintiff it was terminating her long term disability benefits beyond August 21, 2014.

23.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Aetna's August 20, 2014 termination of her benefits.

24.     In support of her claim for long term disability benefits, Plaintiff submitted to Aetna additional medical and vocational evidence demonstrating she met any definition of disability set forth in the Policy.

25.     Plaintiff submitted to Aetna a January 31, 2015 narrative letter from her treating board certified physician, who confirmed it is her medical opinion, "…it is reasonable to assume that [Plaintiff] has been unable to work in any occupation since December 14, 2011 and will be for the foreseeable future."

26.     Further supporting her claim, Plaintiff submitted a January 20, 2015 Independent Medical Examination report, wherein after an extensive examination and review of her medical records, including the reports authored by Dr. Root and Ms. Suski, a physician who is board certified in orthopedic surgery concluded, "The claimant at this time is totally disabled from a job…"

27.     Plaintiff further submitted to Aetna a Functional Capacity Evaluation report dated October 16, 2014, wherein after an extensive several hour evaluation, a qualified physical therapist who had also reviewed the reports authored by Dr. Root and Ms. Suski determined, "…[Plaintiff] is unable to perform any categorical work at this time, even ***sedentary***." (original emphasis).

28.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated February 21, 2015, who after reviewing Plaintiff's medical

evidence and the definition of disability and interviewing Plaintiff concluded, "From a vocational perspective, [Plaintiff] meets the definition of disability set forth by Aetna…"

29.    Plaintiff further submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause.

30.    As part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing.  Defendants did not disclose to Plaintiff, either during the administrative review of her claim or following its final denial, the name of the reviewing physician.

31.    Upon information and belief, Plaintiff alleges the reviewing physician may be a long time medical consultant for the disability insurance industry and/or Aetna.  As a result, Plaintiff alleges the reviewing physician may have an incentive to protect his/her own consulting relationship with the disability insurance industry and/or Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

32.    In letters dated February 19, 2015 and March 17, 2015, in order to engage Aetna in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Aetna and the opportunity to respond to these reviews as well as to provide them to her treating physicians for their response prior to Aetna rendering a determination in her claim.

33.    Prior to rendering its final denial in Plaintiff's claim, Aetna never shared with Plaintiff the report authored by the reviewing physician and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the report and/or perfect her claim.  Aetna's failure to provide Plaintiff with the opportunity to respond to the

reviewing physician's report precluded a full and fair review pursuant to ERISA.  Aetna's action is an ERISA procedural violation and a violation of Ninth Circuit case law.

34.    In a letter dated May 21, 2015, Aetna notified Plaintiff it had denied her claim for long term disability benefits under the Policy.  In the letter, Aetna also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

35.    Upon information and belief, Aetna's May 21, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

36.    In evaluating Plaintiff's claim on appeal, Aetna had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

37.    Aetna failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.  Aetna's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

38.    Plaintiff alleges Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately consider the approval of Plaintiff's Social Security disability claim; failing to adequately investigate her claim; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

39.    Plaintiff alleges a reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Aetna undertook as decision maker and payor of benefits and this provided it with a financial incentive to deny her claim.

40.    Plaintiff is entitled to discovery regarding Aetna's aforementioned conflicts of interest, as well as any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or ERISA procedural violation which may have impacted or influenced Aetna's decision to deny her claim.

41.     With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they justify *de novo* review.

42.     As a direct result of Aetna's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

43.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

44.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.    For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.    For such other and further relief as the Court deems just and proper.

DATED this 30th day of June, 2015.

SCOTT E. DAVIS. P.C.

By:    /s/ Scott E. Davis
       Scott E. Davis
       Attorney for Plaintiff